WEIR *v.* LAKE.

[No. 16,834.   Filed May 26, 1942.   Rehearing denied October 21, 1942.   Transfer denied November 23, 1942.]

James C. Jay, and *Fenton, Steers, Beasley & Klee,* all of Indianapolis, for appellant.

*Clarence W. Means* and *Otto W. Buenting,* both of Indianapolis, for appellee.

BEDWELL, J.—The appellee, George E. Lake, filed a claim against the estate represented by appellant to recover for alleged services and money expended on behalf of appellant's decedent during her lifetime. There was a trial by the court and a finding and judgment for appellee and against appellant in the amount of $1,764.14.

Appellant, upon appeal, relies upon the overruling of his motion for a new trial, and the particular ground thereof specifying that, "the decision of the court is not sustained by sufficient evidence."

The transcript of the evidence discloses the following:

For a period of more than ten years prior to her death, the decedent, Mildred Splady, conducted a board-

ing house in the City of Indianapolis, and claimant boarded with her until a short time before her death. There was evidence that during this period the claimant performed certain services about the house on behalf of decedent; that he waited upon her when she was unable to care for herself, and that he administered aid during periods when she was sick, "the same as a nurse would to a patient." He kept the fires, he carried her food to the bed and gave her water, and he would go to the drugstore and buy her medicine. Part of the time he prepared the food. There was also evidence that claimant provided fuel for decedent and provided her with groceries at an expense of from $6 to $7.50 per week, beginning in 1935 and continuing until he left the home in 1938, and that he also paid board at the rate of $1 per day. Other evidence indicated that he paid taxes, accounts, and expenses for repairs of property of decedent, but there is no definite evidence concerning the amount expended for such items.

The claimant was a plasterer and during a large part of the time, when he lived at the home of decedent, he was employed by a building contractor. This contractor testified that he visited at the home occupied by claimant and decedent occasionally and that he talked with decedent in reference to claimant, and that she told him that there was an arrangement between them by which claimant was to render services to decedent, taking care of her, paying her taxes, and then the one which outlived the other was to have the other's property at their death. Claimant was not present when this conversation took place. Upon cross-examination such witness stated the substance of his conversation with decedent as follows: "She said Mr. Lake was taking care of her and providing her with groceries and paying her bills and there was a mutual under-

standing whoever died first the other was to get the other's property at their death for the services that they had rendered the other."

Another witness testified concerning services claimant performed about the home and a conversation he had with decedent about the claimant. He stated that decedent told him that appellee was so good to her that she expected him to have the home and everything that was in it. Another witness testified that the decedent told him that she wanted the appellee to have her property and to be well paid. In addition there was evidence concerning the value of the services performed by claimant about the home. There was no evidence that the statements made by decedent, heretofor recited, were communicated to appellee, nor is there any evidence that any of them were made in the presence of appellee.

It is the contention of appellant that the evidence was insufficient because the claim of appellee alleged that he expended money and rendered services on behalf of decedent under an agreement and promise that he was to receive decedent's property at her death, and that such allegation was not sustained by the evidence. Appellant further contends that the statements heretofore recited were made to a third person who was not acting on behalf of appellee, and that there is no evidence that such statements were communicated to appellee or that he had any knowledge thereof when the services were performed.

Appellant relies strongly upon the cases of *McClure* v. *Lenz* (1907), 40 Ind. App. 56, 80 N. E. 988; *Brown* v. *Yaryan* (1881), 74 Ind. 305, 306, and *Waechter* v. *Walters* (1908), 41 Ind. App. 408, 84 N. E. 22, and certain other cases which place restrictions upon the

application of the doctrine of implied contracts where services are rendered by a claimant whose relationship with the decedent was such as to rebut the presumption or implication that compensation was intended for the accepted services. These particular cases emphasize the idea that there can be no implied contract unless the evidence clearly shows an intention on the part of the one for whom the services were rendered to pay for the same, and that the claimant rendered the services in expectation of payment; and that such intention must appear by something that was said by the one for whom the services were rendered to the party rendering the same, or that it must affirmatively appear that the statements made by the one accepting the services were communicated to and acted upon by the one rendering the same in expectation of compensation. These limitations upon the nature of the proof necessary in such cases have been thoroughly overthrown by later decisions of this court.

In the case of *Wainwright Trust Co., Admr.,* v. *Kinder* (1918), 69 Ind. App. 88, 96, 120 N. E. 419, this court states the rule that will be applied in determining whether an implied contract exists in those cases where claimant is taken into the family of another and treated as a member of the household, and the relationship is such that no implied obligation on the one hand to pay for board, care, and shelter, or, on the other, for services rendered, exists. The rule is stated in the following language:

"... .To warrant the finding of such contract, the elements of intention to pay on the one hand and expectation of compensation on the other must be found to exist; but such elements, like other ultimate facts, may be inferred from the relation and situation of the parties, the nature and character of the services rendered, and any other facts or

circumstances which may reasonably be said to throw any light upon the question at issue."

Concerning the cases of *Brown* v. *Yaryan* (1881), 74 Ind. 305; *McClure* v. *Lenz* (1907), 40 Ind. App. 56, 80 N. E. 988; *Waechter* v. *Walters* (1908), 41 Ind. App. 408, 84 N. E. 22; *Shutts* v. *Franke* (1908), 42 Ind. App. 275, 85 N. E. 781, this court in *Wainwright Trust Co., Admr.,* v. *Kinder,* says at p. 99:

"Whatever diversity of opinion may heretofore have existed in regard to the rule of implied contracts, or its application to cases of this kind, we regard the rule and its application settled in conformity with the view expressed in this opinion, and cases which recognize or apply a contrary or modified rule can no longer be regarded as authority in this state."

Thereafter, and in the case of *King, Admr.,* v. *Arnot* (1928), 88 Ind. App. 138, 143, 161 N. E. 571, this court again considered the matter. In such case the appellant was contending that it did not affirmatively appear that statements made by decedent were communicated to claimant, or that she was thereby induced to render services in reliance thereon; and that, therefore, there was no evidence on which to base an implied contract to pay for the services. In such case this court says:

". . . In support of this contention, appellant cites and relies on the case of *McClure* v. *Lenz* (1907), 40 Ind. App. 56, 80 N. E. 988. . . . In considering the opinion in that case, however, it should be noted that the reasoning and conclusion of the court therein is not in harmony with that of the Supreme Court in an opinion written by Judge Mitchell in *Wallace, Admr.,* v. *Long, Gdn.* (1886), 105 Ind. 522, 5 N. E. 666, 55 Am. Rep. 222. More important, still, is the fact that this court, in the later case of *Wainwright Trust Co., Admr.,* v. *Kinder* (1918), 69 Ind. App. 88, 120 N. E. 419, in effect, overruled that part of the opinion in the

McClure case, on which appellant relies. We concur in the reasoning and conclusion of this court as the same is expressed in the Wainwright case, which is in accord with the weight of authority. . . ."

In the recent case of *Neef* v. *Neef's Estate* (1942), 110 Ind. App. 309, 312, 37 N. E. (2d) 682, this court considered a case where the court below followed the doctrine of *McClure* v. *Lenz, supra,* in directing a verdict for the defendant estate. In such case the parents of claimant with whom she lived for a number of years after she reached her majority, and for whom she rendered services, had made statements to third persons to the effect that they intended that the claimant be paid for what she did because she had stayed at home and had taken care of them; but the record was silent as to whether claimant was present when such statements were made or as to whether they were communicated to claimant. This court in reversing such cause used the following language:

> "It is true that in order for a contract to be created the party rendering the services must have knowledge of promises or declarations as to payment so that the services are rendered with reliance thereon. But the fact that the persons rendering the services had such knowledge may be proved by circumstances as well as by direct evidence."

The rule laid down in *Wainwright Trust Co., Admr.,* v. *Kinder, supra,* has been consistently followed by this court since the rendition of such decision.

In the case of *McClure* v. *Lenz, supra,* the rule upon which appellant is relying was there stated by the court in the following language at p. 61:

> "Or if one was induced to render services by declarations of a party not in the form of an exact promise to provide for one in his will, and the

declarations were made for the purpose of inducing the person to render the services charged for, such declarations would undoubtedly repel the presumption that the services so rendered were voluntarily rendered, even where the parties were members of the same family. *But, to have such effect, the promises or declarations must have been made under such circumstances as would reasonably induce the person in whose favor they were made to rely upon them, and the services must have been performed in reliance upon them. They must have been made to the party rendering the services, or to some one in his behalf, or they must have been made in his presence, and with the purpose and intention that they should be acted upon by him.*" (Our italics.)

The italicized portion of the quotation which places restrictions upon the nature of the proof required to establish an implied contract was disapproved by this court in *Wainwright Trust Co., Admr., v. Kinder, supra,* and it is no longer necessary to prove the elements of intention to pay or expectation of compensation in the manner therein limited. *Moslander* v. *Moslander's Estate* (1941), 110 Ind. App. 122, 38 N. E. (2d) 268, 270, 271.

But the question here presented for determination is not the same as the question presented in *McClure* v. *Lenz, supra; Wainwright Trust Co., Admr.,* v. *Kinder, supra; King, Admr.,* v. *Arnot, supra,* and *Neef* v. *Neef's Estate, supra.* In each of such cases services were rendered by one who occupied the relationship of a member of a family and the declarations or statements of the deceased were merely declarations as to their intention to make payments for such services. The question arising was whether such declarations had been made under such conditions and circumstances as to establish an implied contract. But here we have involved not only the declarations of the

deceased concerning her intention, but also her declaration to the witness who was a contractor as to the terms and provisions of a mutual understanding that existed between her and appellee.

We know of no reason why the declarations of a deceased person, especially when they are corroborated by conditions and circumstances, are not sufficient to establish the existence, terms, and conditions of an express oral contract. No question is presented concerning the admissibility of such testimony, and while unsworn statements or declarations of a deceased person are by many courts regarded as weak evidence which should be received with caution, there is no reason why such evidence, when admitted, should not be considered and weighed precisely as other evidence. Such statements may be sufficient to prove the issue in question and to support a decision, and particularly is this true where the declarations or statements are supported by other evidence. 31 C. J. S., Evidence, § 265, p. 1015. Bearing upon the question see *Nolte, Exrx.* v. *Eyden* (1925), 82 Ind. App. 580, 146 N. E. 866; *Ross* v. *Felter* (1919), 71 Ind. App. 58, 123 N. E. 20; *Kettry, Administrator* v. *Thumma* (1893), 9 Ind. App. 498, 36 N. E. 919.

The rule is well established that strict rules of pleading are not applicable to claims against estates. A claimant may allege an express contract and recover on an implied contract, or he may allege an implied contract and recover on an express contract. *Masters* v. *Jones* (1902), 158 Ind. 647, 652, 64 N. E. 213; *Caldwell* v. *Ulsh* (1916), 184 Ind. 725, 731, 732, 112 N. E. 518; *Taber* v. *Zehner* (1911), 47 Ind. App. 165, 172, 173, 93 N. E. 1035.

The rule that a plaintiff must recover, if at all, on the theory of his complaint, does not usually apply in

claims against an estate. *Caldwell* v. *Ulsh, supra; Woods, Executor,* v. *Matlock* (1898), 19 Ind. App. 364, 366, 48 N. E. 384; *Stanley's Estate* v. *Pence* (1903), 160 Ind. 636, 641, 66 N. E. 51, 67 N. E. 441; *Logan* v. *Hite, Admr.* (1938), 214 Ind. 233, 239, 13 N. E. (2d) 702.

In *Logan* v. *Hite, Admr., supra,* the Supreme Court calls attention to a number of authorities holding that the "theory rule" of pleading has no application to the statement of claims against an estate, and that a claimant may set up a claim upon one theory and recover on a different. The court says:

"As we understand the above authorities they go no farther than to hold that where one theory appears from the claim, and the evidence offered in support thereof is of a character to establish the claim upon a different theory, this is not a fatal variance so long as a legal liability is shown, the personal representative of the estate is not deceived or misled as to the nature of the claim he is required to meet, and a finding for the claimant would bar another demand within the facts charged in the claim and established by the evidence. Such was the situation shown in *Masters* v. *Jones et al., supra,* where the only variance disclosed was that the claim was on an implied contract and the evidence adduced in support thereof established an express contract of the same tenor. The other cases cited above are to the same effect. We do not think the rule relied upon by appellees goes so far as to permit a claimant to charge an express contract covering a definite period of time, and then recover on another contract covering a different period of time. This would lead to endless uncertainty and confusion. . . ."

There was no variance between the facts pleaded and the evidence produced in support thereof. The appellant could not have been misled or deceived as to the nature of the claim that he was required to meet.

In the case of *Wallace, Administrator, v. Long, Guardian* (1886), 105 Ind. 522, 5 N. E. 666, 55 Am. Rep. 222, a decedent and her husband agreed with a seven year old child that if she would live with them during their lifetime and until their death, and render assistance in the care and keeping of their house and property, that they would make her their heir, and at their death, or the death of survivor of the two, they would give and bequeath to her the entire estate of which they were possessed. The child accepted the proposal and faithfully performed the agreement upon her part, but the decedent neglected to make the will according to the agreement and died intestate. The Supreme Court held that as the particular agreement was not in writing and signed by the decedent, and as it involved the sale of real estate and the transfer of personal property exceeding in value $50, the same was within the statute of frauds and it could not be specifically enforced, nor could it be the foundation for an action for damages. The court further found that the agreement rebutted the presumption that the services rendered were to have been gratuitously performed, and it held that the child was entitled to recover the value of her services. Many decisions rendered by this court and the Supreme Court subsequent thereto have followed or are in accord with such decision.

In the case of *Hensley, Admr., v. Hilton* (1921), 191 Ind. 309, 314, 131 N. E. 38, services had been performed in consideration of a decedent's oral agreement to execute a will making claimant against his estate his legatee. In considering such contract the court says:

"The contract sued on in this case is one falling within the statute of frauds and no action can be maintained upon it, and where services have been performed as shown in this case in consideration of the promises made by decedent in the contract

alleged the plaintiff is entitled to recover the value of his services, not pursuant to the terms of the contract, but on the *quantum meruit* and in such case the value of the services performed, and not the value of the property agreed to be conveyed, is the measure of damages."

Appellant, in his brief, makes the statement that: "Contracts based upon, or in any manner promoting or furnishing opportunity for unlawful cohabitation are contrary to public policy and are void." While we do not agree with the statement as being an accurate or correct statement of the law, we desire to point out that there was no evidence that the contract relied upon by appellee had as a part of its consideration the maintenance of an illicit relationship. There was no evidence herein showing unlawful cohabitation or illicit relationship.

Appellant, in his brief, discusses misconduct on the part of claimant and mistreatment of the decedent, and he contends that the services of claimant were rendered voluntarily without expectation of compensation and that they were of a trivial and inconsequential character that would not interfere with regular employment. Appellant further asserts that the evidence lacks substantial character and dignity to support a claim of this kind. It is hardly necessary for us to point out that this court, on appeal, does not weigh conflicting evidence, and that the weight of the evidence herein and the credibility of the witnesses was for the trial court to determine.

The decision of the trial court was sustained by sufficient evidence.

The judgment is affirmed.

NOTE.—Reported in 41 N. E. (2d) 828.